## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

THE CINCINATTI INSURANCE    )
COMPANY, *et al.*,          )
                         )
     **Plaintiffs,**         )
                         )
**v.**                      )    **Case No.:  5:17-cv-1688-LCB**
                         )
**SAMSUNG SDI COMPANY LTD,**   )
*et al.*,                 )
                         )
     **Defendants.**      )

## MEMORANDUM AND ORDER

Today the Court must decide whether it can exercise jurisdiction over Simplo Technology Co., Ltd. ("Simplo"), a foreign manufacturer of component parts, for placing into the stream of commerce a defective part that caused an injury in the State of Alabama. For the following reasons, the Court finds that it cannot.

## I.    Introduction

This products-liability suit arose from a laptop-battery fire at a dentist's office in January 2016. (Doc. 1; Doc. 55). Plaintiffs The Cincinnati Insurance Company; Terry A. Burgess DDS, Inc.; and Auto-Owners Insurance Company ("Plaintiffs") brought suit against Defendants Samsung SDI Co., Ltd ("Samsung"); Samsung SDI America, Inc. ("Samsung America"); Simplo Technology Co., Ltd. ("Simplo"); ASUSTeK Computer, Inc. ("ASUSTeK"); ASUS Computer International

("ASUS"); and Henry Schein, Inc. ("Schein"). Plaintiffs sought damages for the injuries caused by the fire. (*Id.*). Simplo, appearing specially to contest personal jurisdiction, has moved to dismiss Plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(2). (Doc. 58). The Court has been fully briefed. (Docs. 58, 65, 70, 77, 84, 85; Hearing of 4/3/2019). The Court authorized Plaintiffs to conduct jurisdictional discovery and no objections were filed. (Doc. 78). The issue is ripe for decision.

## II.  Facts

In October of 2013, Plaintiff Burgess purchased an E4D intraoral scanner package for his practice at the Madison Center for Dental Care. (Doc. 55 at 9). The scanner's manufacturer, Defendant Schein, included with the scanner package an ASUS laptop, Model No. G750JW-DB71, that he in turn had purchased from Defendant ASUSTeK through its wholly owned American subsidiary Defendant ASUS. Incorporated into the scanner's laptop was a lithium-ion battery pack manufactured in China by Simplo. (Doc. 55 at 9–10). On January 20, 2016, a defect in the battery triggered a runaway thermal event that caused a fire in, and serious property damage to, Plaintiff Burgess's facility. *Id.*

Of Plaintiffs' twenty-four claims, four are brought against Simplo.[1] Plaintiffs

---

[1] Plaintiffs bring claims of negligence, breach of the Alabama extended manufacturer liability doctrine, failure to warn, and breach of implied or express warranties. (Doc. 55 at 15, 30, 41, 46).

argue that this Court has personal jurisdiction over Simplo because Simplo:

(1) Designed, manufactured, assembled, sold, or distributed the battery to conform with U.S. governmental and industry-wide safety and design standards, including safety standards issued by regulatory agencies and those found in state common law;

(2) Sent representatives to North American trade shows, or participated in trade groups, to ensure compliance with governmental and industry-wide safety and design standards and criteria, including safety standards issued by U.S. regulatory agencies and found in common law;

(3) Advertised through the World Wide Web, print, and other media to expand its market for components and other products in the U.S., including the State of Alabama;

(4) Retained American legal counsel to defend and protect Simplo's interests in foreseeable product liability suits filed against it in the U.S., including the State of Alabama;

(5) Has component parts and other products sold or distributed by retailers in the State of Alabama;

(6) Has North American Hub Service locations in Reno, Nevada; Santa Teresa, California; Austin, Texas; Nashville, Tennessee, and Ohio;

(7) Has delivered over 200 million battery packs every year throughout the world; and

(8) Attended a pre-suit lab examination in Atlanta, Georgia to inspect the component parts and laptop at issue.

Simplo disagrees. Simplo contends that this Court lacks personal jurisdiction because, according to the affidavit of Wei, Chin-win, Simplo's "Vice President [of] Administration," Simplo is incorporated under the laws of and has its principal place of business in Taiwan. (Doc. 58–1 at 2). Battery packs destined for ASUS computers are first manufactured and assembled in Shanghai, Changshu, or Chongqing. Once assembled, they are shipped to factories owned by another party, either in Shanghai or Chongqing, and incorporated into the laptops. (*Id.*). Simplo stresses its negligible connections with the State: it has never advertised in the State, solicits no business from the State, and has no control over the distribution, sale, or service of the products into which its battery packs are installed.[2] Simplo also disclaims any knowledge that its products will be shipped to or sold in the State. (*Id.* at 2–4).

---

[2] Simplo also avers that it has never sold or shipped products to the State; is neither licensed, authorized, nor registered to do business in the State; has no distributors or customers in the State; has never entered into or executed a contract in the State; has never provided services in or to any person in the State; has never paid a franchise tax in the State; has never owned, rented, or leased any real or personal property in the State; maintains no offices nor conducts any business in the State; has no assets in the State; has never maintained a place of business in the State; has never had an agent for service of process in the State; has never maintained a telephone, telex, or telefax in the State; has never employed anyone in the State; and has never had employees that have attended trade shows or sales meetings in the State. (Doc. 58–1 at 2–4).

### III.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) authorizes defendants to file a pre-answer motion contesting a federal district court's personal jurisdiction over the movant. When a nonresident defendant has filed a 12(b)(2) motion, a court must first decide whether the plaintiffs have pled facts sufficient to establish a prima facie case of personal jurisdiction. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If the plaintiffs meet their burden, the defendant may rebut their allegations with an evidentiary showing, by affidavits or otherwise, that the court lacks jurisdiction over its person. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). And if the defendant presents evidence sufficient to rebut the plaintiffs' allegations, the plaintiffs must substantiate their jurisdictional allegations by affidavits or other competent proof. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (citing *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 583 (M.D. Fla. 1991)).

It is not enough for plaintiffs to merely reiterate the allegations in the complaint, *id.*; but to the extent that the plaintiffs' allegations are not controverted by the defendant's evidence, the court must take the allegations in the complaint as true, *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1350. If the parties have presented conflicting evidence, all factual disputes must be resolved in the plaintiffs' favor, and the plaintiffs' prima facie showing will be sufficient to survive the motion to

dismiss notwithstanding the movant defendant's contrary presentation. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

## IV.    Discussion

The power to exercise personal jurisdiction over a defendant is granted by statute and delimited by the Constitution. *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). A court deciding a 12(b)(2) motion thus "undertakes a two-step inquiry to determine whether" it may exercise personal jurisdiction over the movant. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015)). First, the court consults the state's long-arm statute to see whether it authorizes personal jurisdiction over the defendant. *Id.* Second, the court decides whether exercising personal jurisdiction over the defendant comports with the Due Process Clause of the Fourteenth Amendment. *Id.*

### A. The statutory basis for personal jurisdiction

Federal Rule of Civil Procedure 4(k)(1)(a) provides federal courts sitting in diversity the power to exercise personal jurisdiction "over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Under Alabama's long-arm statute, a defendant beyond the state's borders is nevertheless subject to the jurisdiction of Alabama state courts "when the . . . entity has such contacts with [Alabama] that the prosecution of the action

against the . . . entity in [Alabama] is not inconsistent with the constitution of [Alabama] or the Constitution of the United States." Ala. R. Civ. P. 4.2(b). The Alabama Supreme Court "has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution." *Elliott v. Van Kleef*, 830 So. 2d 726, 730 (Ala. 2002); *see also Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.,* 207 F.3d 1351, 1356 (11th Cir. 2000) ("Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution.").

### B. Due process limitations

"It has long been established that the Fourteenth Amendment limits the personal jurisdiction" of the courts. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779 (2017) (first citing *Daimler*, 571 U.S. at 125–32; then citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980); then citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316–17 (1945); and then citing *Pennoyer v. Neff,* 95 U.S. 714, 733 (1878)). Since the Supreme Court's landmark decision in *International Shoe Co. v. Washington*, a State's exercise of personal jurisdiction over a nonresident defendant has been held consistent with the Due Process Clause as long as he has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play

and substantial justice.'" 326 U.S. at 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The heart of the minimum-contacts inquiry has always focused on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). And whether the jurisprudential and policy justifications be couched in terms of the limits of state sovereignty, *see J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality opinion), fairness to the defendant, *see id.* at 891 (Breyer, J., concurring), or reasonableness, *see id.* at 899 (Ginsburg, J., dissenting) (citing *World-Wide Volkswagen*, 326 U.S. at 297 (1980)), the due process requirements ensure "that a defendant be haled into court in a forum State based on his own affiliation with the State," rather than the "'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 475 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The Supreme Court has recognized "two types of personal jurisdiction": general, or all-purpose, jurisdiction and specific, or case-linked, jurisdiction. *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction may be asserted over a nonresident defendant whose "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home" there, even where the lawsuit

neither arises out of nor relates to the defendant's contacts with the State. *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction, in contrast, may be exercised only when "the *suit* . . . arise[es] out of or relat[es] to the defendant's contacts with the *forum*." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (internal quotation marks omitted) (quoting *Daimler*, 571 U.S. at 127). Plaintiffs allege that Simplo maintains minimum contacts with the State such that the Court can exercise either type of personal jurisdiction. (Doc. 55 at 8).

### 1. General jurisdiction

The paradigmatic fora for the exercise of general jurisdiction over a corporation are its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. A foreign corporation, however, will necessarily not meet that test. For a foreign corporation, courts have general personal jurisdiction only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919). Personal jurisdiction is allowed in those limited situations because the "foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* at 127 (alterations in original) (quoting *Int'l Shoe*, 326 U.S. at 318). The minimum contacts necessary to establish general jurisdiction over a foreign

corporation is very high; "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6.

Simplo's contacts with the State are neither "continuous" nor "systematic." The facts furnish but one connection with the State: the lone battery-pack that found its way into Plaintiff Burgess's dental office. A single contact is axiomatically insufficient to support general jurisdiction over a foreign corporation. Simplo therefore lacks sufficient contacts to subject it to suit in the State on the basis of general jurisdiction.

### 2. Specific jurisdiction

Specific jurisdiction, in contrast, requires an affiliation "between the forum and the underlying controversy," typically an "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted) (quoting von Mehren & Trautman, Jurisdiction To Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)). In the Eleventh Circuit, courts apply a three-part test to determine whether exercising jurisdiction over a nonresident defendant comports with due process. *Waite*, 901 F.3d at 1313 (citing *Louis Vuitton Malletier*, 736 F.3d at 1355). First, the court must determine whether the plaintiffs "claims 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Id*. Second, the

court must decide whether the defendant has "'purposefully availed' itself of the privilege of conducting activities within the forum State." *Id.* Third, "[i]f the plaintiffs carry their burden of establishing the first two prongs," the court must decide "whether the defendant has 'ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (second alteration in original).

### (i)    Whether Plaintiffs' claims arise out of or relate to Simplo's contacts with Alabama

Plaintiffs satisfy the first prong. In a recent decision, the Eleventh Circuit held that a tort "arises out of or relates to" a defendant's activity in a State "only if the activity is a 'but-for' cause of the tort." *Waite*, 901 F.3d at 1314. (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)).[3] Plaintiffs contend that *Waite* is inapplicable because it was decided under Florida's long-arm statute rather than Alabama's. The Court disagrees. The statutory and due-process inquiries are discrete. Having decided that the long-arm statute permits personal jurisdiction "to the fullest extent allowed by" the Fourteenth Amendment, *Ruiz de Molina,* 207 F.3d at 1356, the Court need only decide whether exercising jurisdiction

---

[3] In so holding, the panel assumed without deciding that the but-for causation requirement relied on in *Oldfield*, 558 F.3d 1210 (11th Cir. 2009), and *Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010), applies equally to cases decided under the Fourteenth Amendment. Because the parties here, as in *Waite*, do not contend that the Fifth and Fourteenth Amendments impose different restrictions on personal jurisdiction, the Court finds that *Waite*'s but-for test is likewise controlling in this case.

over the defendant is consistent with due process. And the reasoning in *Waite* focuses on that constitutional inquiry.

Simplo's role in the production and assembly of the defective computer, as attenuated as the connection to the suit may be, was nevertheless a but-for cause of the torts: had Simplo not contributed its defective part to the laptop, Plaintiff Burgess's office would not have caught fire. Moreover, because the fire occurred in the State, there is an affiliation between "the [State] and the underlying controversy." *Goodyear,* 564 U.S. at 919. Because Simplo's contact with the State was a but-for cause of Plaintiffs injuries, and because those injuries occurred in the State, Plaintiffs have established that their claims "arise out of or relate to" at least one of Simplo's contacts with the State.

### (ii) Whether Simplo "purposefully availed" itself of the privileges of conducting activities in Alabama

Plaintiffs, however, have failed to satisfy the second prong. A defendant has "purposefully availed" itself of the privilege of conducting activities within a State if the defendant has "purposefully establish[ed] contacts" in that State. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010). To satisfy the second prong, the plaintiffs must show that the defendant "purposefully directed his activities at residents in the forum," and that the litigation "result[ed] from alleged injuries that arise out of or relate to those activities." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

In *World-Wide Volkswagen*, 444 U.S. 286 (1980), the Supreme Court discussed a theory of personal jurisdiction based on a defendant's placement of goods into the "stream-of-commerce." *See id.* at 297–98. That discussion, however, has blurred the limits of the "purposeful availment" test. *See generally* 4 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1067.4 (4th ed. 2019). That test's intractability becomes clear where the argument for jurisdiction depends entirely upon the connection between a forum-state injury and a foreign component-parts manufacturer's placement of the injury-causing good into the stream of commerce.

The purposeful-availment rule has its origins in the wandering-settlor case of *Hanson v. Denckla*, 357 U.S. 235 (1958). In *Hanson*, the Supreme Court held that:

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

357 U.S. at 253. In the years since *Hanson*, the Court has repeatedly invoked the rule to delimit the reach of state courts, *see, e.g.*, *Walden*, 571 U.S. at 288; *World-Wide Volkswagen*, 444 U.S. at 294–96, explaining that the rule exists to guarantee that a corporation will have "clear notice that it is subject to suit [in a particular

forum" so that it "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State," *id.* at 297.

Purposeful availment thus "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). And though the unilateral activity of others may not create the nexus between the forum and the defendant, "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (first citing *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957); and then citing *Kulko v. Cal. Superior Court,* 436 U.S. 84, 94 n.7 (1978)).

Actions that are merely "foreseeable," however, do not satisfy the purposeful-availment test. *World-Wide Volkswagen*, 444 U.S. at 295. Thus, in *World-Wide Volkswagen*, the Oklahoma court did not have personal jurisdiction over the tri-state distributor or the New York retailer of the car that injured the plaintiffs, even though it was foreseeable that a car sold by either defendant might end up in Oklahoma. *Id.* at 297. "'[F]oreseeability' alone," the Court noted, "has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Id.* at 295. Nor is foreseeability "wholly irrelevant." *Id.* at 297. Rather, "the foreseeability that is

critical to due process analysis is not the mere likelihood that a product will find its way into the forum State" but "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipated being haled into court there." *Id.*

In rejecting foreseeability as a "sufficient benchmark," the Court did not hold that exercising personal jurisdiction over the car's manufacturer was precluded. Had that issue been before the Court, the opinion suggests that it would indeed have found jurisdiction appropriate:

> Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.* Thus, a majority of the Court agreed, without deciding, that "a forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–98.

The Supreme Court has twice sought to clarify when placing a product into the stream of commerce confers jurisdiction and when it does not. *See Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102 (1987); *Nicastro,* 564 U.S. 873

But it has not settled—or clarified—the issue. In *Asahi*, a majority of the Court agreed that the unique posture of the case made exercising personal jurisdiction over Asahi unconstitutional: eight justices agreed that exercising personal jurisdiction "would offend 'traditional notions of fair play and substantial justice.'" 480 U.S. at 113–6 (citing *Int'l Shoe*, 326 U.S. at 316). The Court was sharply divided, however, on the stream-of-commerce theory. *Id.* Four justices agreed that Justice O'Connor's "stream-of-commerce-plus" theory described the proper test. Under that test, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed at the forum State." *Id.* at 112. Four other justices preferred a more expansive theory of jurisdiction. *Id.* at 117 (Brennan, J., concurring). Under Justice Brennan's test, a participant in the stream of commerce— that is, "the regular and anticipated flow of products from manufacture to distribution to retail sale," and not "unpredictable currents or eddies"—would be subject to the state's jurisdiction as long as he was "aware that the final product is being marketed in the forum State." *Id.*

Since neither test in *Asahi* garnered a majority of votes, lower courts have split on which test to apply in the purposeful-availment analysis.[4] The Eleventh Circuit

---

[4] *See, e.g.*, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state."); *Bridgeport Music, Inc. v. Still N The Water Pub*, 327 F.3d 472, 479–80 (6th Cir. 2003) (adopting Justice O'Connor's stream of commerce 'plus' approach); *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liab. Litigation*, 888

has not adopted either test. *See Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1548 (11th Cir.1993) ("Because jurisdiction in the United States over [defendant] in this case, however, is consistent with due process under the more stringent 'stream of commerce plus' analysis adopted by the *Asahi* plurality, we need not determine which standard actually controls this case," but also noting that "in the absence of further guidance from the Supreme Court, several courts have declined to follow the *Asahi* plurality's analysis, and have instead continued to apply the 'stream of commerce' approach adopted in *World-Wide Volkswagen*.").

The Court once again considered the stream-of-commerce issue in *Nicastro*, but the result was another fractured opinion. *Nicastro* involved a New Jersey resident who was seriously injured by a British-made metal-shearing machine. 564 U.S. at 877. The British manufacturer sold its goods in the U.S. through an independent nationwide distributor. *Nicastro*, 564 U.S. at 877. In finding that the New Jersey courts lacked personal jurisdiction over the defendant, the plurality relied chiefly on three facts: (1) no more than four machines had been sold in New Jersey; (2) the British manufacturer had targeted the U.S. market as a whole; and (3) the British firm had sent representatives to trade shows in several U.S. cities outside of New Jersey. Writing for the plurality, Justice Kennedy found that a defendant's

---

F.3d 753, 778 (5th Cir. 2018) (noting that the Fifth Circuit has embraced Justice Brennan's more expansive stream-of-commerce doctrine).

"transmission of goods" established personal jurisdiction "only where the defendant can be said to have targeted the forum." *Id.* at 882 (plurality opinion).

Because the case lacked a majority opinion, the holding is the "narrowest grounds" articulated in the concurrence, here offered by Justice Breyer. *Marks v. United States*, 430 U.S. 188, 193 (1977); *see also Smith v. Poly Expert, Inc.*, 186 F. Supp. 3d 1297, 1305 n.11 (N.D. Fla. 2016) ("When it's apparent that an opinion concurring in the judgment is 'less far–reaching' than a plurality opinion, that concurring opinion controls. In this case, 'less far–reaching' means 'less restrictive of personal jurisdiction,' and so Justice Breyer's opinion controls." (internal citations omitted)). Justice Breyer took a more restrictive view of the facts than the plurality, noting that that on the record only one machine had been sold and shipped to New Jersey. *Nicastro*, 564 U.S. at 888 (Breyer, J., concurring in judgment). Given that single sale, Justice Breyer concluded that "these facts do not provide contacts between the British firm and the State of New Jersey constitutionally sufficient to support New Jersey's assertion of jurisdiction in this case." *Id.* He reasoned that "[n]one of our precedents finds that a single isolated sale . . . is sufficient . . . . Accordingly, on the record present here, resolving this case requires no more than adhering to our precedents. I would not go further." *Id.* at 888–89.

Because no test "clarifying" *World-Wide Volkswagen* has garnered a majority, foreseeability as a criterion for purposeful availment remains limited to the

amorphous test articulated in that case: that the defendant delivered its goods into the stream of commerce "with the expectation that they w[ould] be purchased" by consumers in the State. 444 U.S. at 298. The only guidance is thus furnished by the "narrowest grounds" of Justice Breyer's concurrence in *Nicastro*: the unilateral act of an independent intermediary reselling a single good to a State cannot suffice to subject a foreign manufacturer to personal jurisdiction in that State. *Nicastro*, 564 U.S. at 887–93.

Simplo's connection to the State is even more attenuated than the single sale in *Nicastro*. In *Nicastro*, the British manufacturer sold its machine to an American distributor who then sold one machine to a customer in New Jersey. *Id.* at 878. Simplo sold its battery pack to a foreign manufacturer, who then incorporated it into a laptop and delivered it to their American subsidiary. (Doc. 58–1 at 2). The American subsidiary then sold the battery-pack bearing laptop to a manufacturer of dental scanners. (Doc. 55 at 9–10). Finally, that scanner manufacturer incorporated the battery-pack bearing laptop into a scanner package and sold it to Plaintiff Burgess in the State. (*Id.*). The manufacturing of a single battery pack[5] that arrived indirectly in the State after being incorporated into a new product and changing hands at least

---

[5] At least one more Simplo-made battery pack has made it to the State, giving rise to another case before this Court. *See ALFA Mutual Ins. Co. v. Samsung SDI Co. LTD*, 5:19-cv-00518-LCB (N.D. Ala. filed April 2, 2019).

three more times cannot suffice to show that Simplo "purposeful availed" itself of the privileges of conducting activities within the State.

And if further evidence of the lack of specific jurisdiction were needed—it is not—Simplo has service hubs in five States, but none in the State of Alabama. Simplo has never specifically targeted the State with advertisements. And Simplo claims to have no knowledge that its products would end up in the State. Further distinguishing it from the defendant in *Nicastro*, Simplo has neither sought to distribute its goods throughout the United States nor directly targeted the market as a whole. Rather, its business is conducted only in Taiwan, and its battery packs are all assembled, sold, and delivered to factories only in mainland China. Moreover, at least three independent intermediaries—Defendants ASUSTeK, ASUS, and Schein—have intervened between Simplo's battery-pack production and Plaintiffs' injuries.

*Nicastro*'s British manufacturer did not "purposefully avail" itself of the privileges of conducting activities in New Jersey; the same must be true of Simplo and Alabama. Construing the facts in the light most favorable to Plaintiffs, Simplo has therefore not "purposefully availed" itself of the privileges of conducting business in the State.

Because Plaintiffs have not met their burden under the second-prong of the test, the Court need not decide whether exercising jurisdiction over Simplo would violate traditional notions of fair play and substantial justice.

## V.  Conclusion

Plaintiffs have therefore failed to make a prima facie case for exercising personal jurisdiction over Simplo. Defendant Simplo Technology Company, Ltd.'s Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction (Doc. 58) is therefore **GRANTED,** and Simplo is **TERMINATED** as a defendant in this case.

**DONE** and **ORDERED** this March 31, 2020.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE